**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **JANINE MOEBIUS** | * | |
| | * | |
| *Plaintiff,* | * | |
| v. | * | Case No. 1:26-cv-02104-JMC |
| **ANNE ARUNDEL COUNTY DEPARTMENT OF HEALTH, et al.** | * | |
| *Defendants.* | * | |

* * * * * * * * * * * * * * * * *

## MEMORANDUM OPINION AND ORDER

Plaintiff Janine Moebius ("Plaintiff") initiated the present lawsuit on May 27, 2026, against her former employer, Anne Arundel County Department of Health ("AAC DOH"), its affiliate, Anne Arundel County Public Schools ("AACS") and Joseph Meiklejohn (collectively, "Defendants"). (ECF No. 1). Plaintiff alleges the following claims: (1) a sex-based hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII") (Count I); (2) sex discrimination in violation of Title VII (Count II); (3) unlawful retaliation in violation of Title VII (Count III); (4) Negligent supervision (Count IV); (5) Negligent retention (Count V); (6) Assault (Count VI); and (7) Intentional Infliction of Emotional Distress (Count VII) in connection with Plaintiff's employment at AACPS. *Id.* (ECF No. 1). Presently before the Court are AAC DOH's and AACPS's Motion to Dismiss. (ECF No. 17). The motion has been fully briefed (ECF Nos. 17, 34, 37) and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons set forth herein, Defendants' Motion to Dismiss (ECF No. 17) shall be GRANTED in part and DENIED in part.

## I. BACKGROUND

Defendant AAC DOH employed Plaintiff as a Registered Nurse with a Bachelor of Science in Nursing while under the control and supervision of AACPS. (ECF No. 1 at 2).[1] Plaintiff alleges that while stationed as a school nurse at Mary Moss at J. Albert Adams Academy, she had a personal relationship with her co-worker, Mr. Meiklejohn. *Id.* She asserts that upon the conclusion of their relationship, Mr. Meiklejohn "subjected her to a sustained campaign of stalking, intimidation, and workplace harassment." *Id.*

### *i. Administrative Exhaustion*

Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission (the "EEOC") alleging discrimination, hostile work environment, harassment, and retaliation on the basis of her sex, naming AAC DOH, and AACPS as respondents on Feburary 17, 2026. *Id.* at 3. The EEOC issued a Notice of Right to Sue for all charges on February 26, 2026. *Id.* Plaintiff filed her complaint ninety days thereafter.

### *ii. Factual Background*

Plaintiff is currently employed by AAC DOH as a school health nurse. *Id.* at 4. During the two and a half years prior to this action, Plaintiff was stationed at the Mary Moss at J. Albert Adams Academy. *Id.* Accordingly, Plaintiff alleges that she is employed by AAC DOH and was under the AACPS's control and supervision during the relevant time period. *See id.* AACPS employed Mr. Meiklejohn as a Crisis Interventionist at the same school in the same timeframe. *See id.* at 5.

[1] When the Court cites to a specific page number or range of page numbers, the Court is referring to the page numbers provided in the electronic filing stamps located at the top of every electronically filed document. If there are none, the Court is referring to the page number of the PDF.

Plaintiff alleges as early as August 14, 2025, AACPS administrators were "aware of concerns about Mr. Meiklejohn's conduct and temperament." *Id.* On that date, Principal Katherine Berish "communicated to Ms. Moebius that Mr. Meiklejohn was 'easily triggered,' that he had anger problems and mental health concerns, and that he was seeking anger management counseling." *Id.* On September 8, 2025, "Mr. Meiklejohn engaged in hostile text message exchanges with Ms. Moebius regarding workplace gossip about her personal life." *Id.* Plaintiff alleges that these messages demonstrated that certain AACPS staff such as Assistant Principal Sarah Velado "shared Ms. Moebius' personal information with Mr. Meiklejohn and others." *Id.* Plaintiff avers that those messages show Mr. Meiklejohn acknowledge that he too shared information about Plaintiff's personal life and told Ms. Velo that "going forward anything related to [Ms. Moebius] needs to stay quiet." *Id.* at 6.

Then, Plaintiff asserts on October 31, 2025, and continuing into November 1, 2025, Mr. Meiklejohn placed twenty-four phone calls to Plaintiff by way of FaceTime Audio, FaceTime Video, and phone call. Plaintiff asserts that he"also sent Ms. Moebius hostile and threatening text messages, including: 'Fuck you,' 'Fuck off,' 'You pushed me to a point where I actually don't want US anymore,' 'I'll never forget or forgive you for that,' and 'If you destroy spread rumors or start things at work I will not hesitate to go to admin.'" *Id.* Plaintiff alleges that this is "stalking behavior," for which she sought a protective order. *Id.* The District Court of Maryland for Anne Arundel County issued a Temporary Protective Order ("TPO").

On November 4, 2025, Mr. Meiklejohn "sent Ms. Moebius a message at 2:00 AM in which he threatened her and stated that he thought she was plotting against him. He also called her three (3) times on the morning of November 5, 2025, while she was driving to work." *Id.* Plaintiff asserts that after she arrived to work on November 5, 2025, Mr. Meiklejohn confronted her in a

parking lot to ask if they were "good at work" and used a threatening and angry tone. *Id.* A co-worker who was present "provided a written statement on or about November 5, 2025, to Principal, Phillip Elliott" and stated, "Mr. Meiklejohn quickly walked up to Nurse Janine and 'asked for a word'" and that "He appeared upset and aggressively walked towards her." *Id.* at 7.

Plaintiff alleges that on November 6, 2025, Plaintiff walked past Mr. Meiklejohn's desk to evaluate a student, and Mr. Meiklejohn indicated "in an aggressive, loud, and hostile tone" that he had to go downstairs and could not be around Plaintiff due to the TPO. *Id.* Plaintiff alleges she did not feel comfortable being alone. In another instance on November 12, 2025, Plaintiff assisted a co-worker with a broken ankle past Mr. Meiklejohn's desk and he made a similar comment, "What is this? Like the third time today?" *Id.* at 8.

Plaintiff had a meeting with Principal Elliot and Ms. Velado, who left "due to her known close relationship with Mr. Meiklejohn." *Id.* Plaintiff alleges that after Ms. Velado left, Plaintiff "had a full panic attack lasting approximately one hour, requiring comfort from Principal Elliott and [Assistant Principal] Berish." *Id.* The next day, Plaintiff made a hostile work environment complaint to her supervisor and requested Mr. Meiklejohn's removal. *Id.*

On November 14, 2025, another TPO took effect and required Mr. Meiklejohn not to contact Plaintiff and required him "to surrender all firearms to the Anne Arundel County Sheriff's Department." *Id.* at 9. Plaintiff alleges that for the next three days, she placed "multiple phone calls to the AACPS Office of Investigations that went unanswered." *Id.* Then, on November 18, 2025, Plaintiff submitted another complaint to a Ms. Kivett, who was the Director of Investigations and Compliance at AACPS. *Id.* She "questioned why AACPS had not removed Mr. Meiklejohn despite the protective order and ongoing harassment." *Id.* Ms. Kivett replied, indicating that AACPS could not act until the legal matter was resolved. *Id.* Plaintiff alleges that this response

"left Ms. Moebius unprotected and denied her the benefit of AACPS's own anti-harassment and anti-discrimination policies." *Id.*

Around that same time, Plaintiff requested the video footage of the November 5, 2025 parking lot confrontation for an upcoming court hearing, and Principal Elliott stated that Plaintiff would need to obtain a subpoena. *Id.* at 10. On November 21, 2025, Plaintiff submitted another complaint stating that Ms. Velado "shared the parking lot video footage with support staff, creating further division and a hostile work environment." *Id.* "After viewing the videos, AACPS support staff questioned why Ms. Moebius still worked there, and warned each other to 'watch out' for her." *Id.* On December 4, 2025, a final protective order hearing took place, and a final protective order was denied. *Id.*

On December 8, 2025, Plaintiff made another complaint to AAC DOH Human Resources, "reporting that she continued to hear rumors being spread about her within the building, and requested an update on the status of the AACPS investigation that could now proceed given the conclusion of the legal proceedings." *Id.* at 10-11. That same day, Plaintiff "was removed from her workplace at Mary Moss at J. Albert Adams Academy and informed she was not to return or collect her personal belongings." *Id.* at 11. Plaintiff alleges that no explanation was provided for her removal. *Id.* Mr. Meiklejohn "was permitted to remain employed at the facility." *Id.* Plaintiff was advised she could return to retrieve her belongings two days later. *Id.* Plaintiff alleges that because she was hired as a Community School Nurse, a reassignment "risked reducing her pay" and that an HR representative stated that she would have further conversations with Plaintiff to avoid a reduction in pay. *Id.* There is no allegation that Plaintiff's reassignment actually did result in any loss of pay. *Id.*

## II. LEGAL STANDARD

The purpose of Federal Rule of Civil Procedure 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)) (internal quotations omitted). To survive a Rule 12(b)(6) motion to dismiss, "detailed factual allegations are not required, but a plaintiff must provide the grounds of his entitlement to relief," which requires "more than labels and conclusions, or a formulaic recitation of the elements of a cause of action." *Petry v. Wells Fargo Bank, N.A.*, 597 F. Supp. 2d 558, 561–62 (D. Md. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007)) (internal quotations omitted). In considering a motion to dismiss, "the Court must accept the complaint's allegations as true, and must liberally construe the complaint as a whole." *Humphrey v. Nat'l Flood Ins. Program*, 885 F. Supp. 133, 136 (D. Md. 1995) (internal citations omitted). The Court must also construe the facts and reasonable inferences from the facts in the light most favorable to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997); *see also Petry*, 597 F. Supp. 2d at 562 ("Once a claim has been stated adequately . . . it may be supported by showing any set of facts consistent with the allegations in the complaint.") (quoting *Twombly*, 550 U.S. at 546).

## III. ANALYSIS

### A. The Complaint will Not be Dismissed Because the EEOC Dismissed Plaintiff's Charges under 42 U.S.C. § 2000e-5(f)(1)

The Court will first address Defendants' second argument to dismiss the Complaint for failure to exhaust administrative remedies. (ECF No. 17-1 at 7). To that end, Defendants' unique argument is not that Plaintiff filed an untimely complaint—Rather, Defendants argue that Plaintiff filed her complaint too soon after she received her right to sue letter. *Id.* Defendants compare the

nine day turnaround here to *White v. University of Maryland Medical Center*, in which Judge Bennett concluded that a two-day turnaround between the issuance of a right to sue letter and the filing of a complaint rendered the notice invalid because Title VII unambiguously confers upon employers a 180 day window in which to process and investigate an EEOC claim. *White v. Univ. of Md. Med. Ctr.*, 642 F. Supp. 3d 504, 513 (D. Md. 2022). It is true that the Court concluded that when a plaintiff filed a complaint two days after receiving a right to sue letter, "the appropriate remedy is to dismiss the complaint without prejudice, and to allow the plaintiff to re-file only after the EEOC has either dismissed the charge for lack of reasonable cause, or attempted to resolve the charge for the remainder of the 180-day investigation period imposed by Title VII." *Id.* (citing *Martini v. Fed. Nat'l Mortg. Ass'n*, 178 F.3d 1336, 1347–48 (D.C. Cir. 1999). To be sure, the Equal Employment Opportunity Act of 1972

> provides the EEOC with four options once a civil charge has been filed by an aggrieved employee. First, the EEOC must investigate the charge and either [1] dismiss for a lack of reasonable cause or [2] attempt to resolve the charge through conciliation and other informal dispute resolution techniques. Second, should conciliation fail, the agency may [3] file a civil action on the complainant's behalf, or [4] permit the complainant to file suit on their own behalf once 180 days have elapsed since the charge was filed.

*Id.* at 509. The Court considered this same question in *Pitts v. Maryland Department of Transportation*. There, as here, the defendant relied on *White* to argue that the issuance of a right to sue letter was premature and therefore administrative remedies had not been exhausted. *Pitts v. Md. Dep't of Transp.*, Civil Case No. 1:23-cv-00983-JMC, 2023 WL 6125933, at *1 (D. Md. Sept. 19, 2023). Closer to the timeline here, the *Pitts* plaintiff filed a charge with the EEOC ten days before the EEOC dismissed the suit and issued a right to sue letter. *Id.* This Court distinguished *White*, which "dealt with the EEOC issuing a Notice of Right to Sue pursuant to 29 C.F.R. § 1601.28" and recognized that 29 C.F.R. § 1601.28 is the subject of great debate among courts in the Fourth Circuit. *See id.* at *3. Notwithstanding those disputes, however, 29 C.F.R. § 1601.28

permits the EEOC to issue a right to sue letter when the EEOC "has determined that it is probable that the EEOC will be unable to complete its administrative processing of the charge within 180 days from the filing of the charge and has attached a written certification to that effect" when a plaintiff has requested a right to sue letter in writing. *Id.*; *see also* 29 C.F.R. § 1601.28(a)(2). Here, as in *Pitts*, there is no evidence that plaintiff made any such request. *Pitts*, 2023 WL 6125933, at *3. Thus, there is no indication that the statute at issue in *White* is at issue here. *See id.* Second, the *Pitts* Court reasoned that under *White*, a "complainant may bring a private claim if the charge is dismissed by the EEOC, or, after 180 days have passed since the filing of the charge if the EEOC has not filed an action on behalf of the employee." *Id.* (quoting *White*, 642 F. Supp. 3d at 509). As a result, the Cout considered that "*White* as well as other cases before this Court have consistently held that a plaintiff may file an employment discrimination lawsuit in accordance with 42 U.S.C. § 2000e-5(f)(1) when, among other things, their charges have been dismissed by the EEOC." *Id.* "In fact, even where this Court has found Notices of a Right to Sue premature, the Court has directed that such plaintiffs may refile their action 'when the remainder of the 180-day period referred to in 42 U.S.C. § 2000e-5(f)(1) has run *or when their charges have been dismissed by the EEOC.*'" *Id.* (quoting *Loney v. Carr-Lowrey Glass Co.*, 458 F. Supp. 1080, 1081 (D. Md. 1978)); *see also Vanguard Just. Soc. Inc. v. Hughes*, 471 F. Supp. 670, 680–81 (D. Md. 1979) (finding that plaintiffs' Notice of Right to sue was premature because "[t]here is nothing in the record...indicating that the EEOC *either* made a determination of reasonable cause *or dismissed the charges filed by plaintiffs*") (emphasis added).

Although Defendants argue that there has been no investigation in this case, the allegations are different. Here, Plaintiff filed an EEOC charge on February 17, 2026, and the EEOC issued a right to sue letter nine days later, on on February 26, 2026. (ECF Nos. 1-2; 1-3). The right to sue

letter indicates that the EEOC "will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute." (ECF No. 1-3 at 2). Thus, the EEOC dismissed the charge. *Id.* Therefore, under *White, Pitts,* and *Loney*, Plaintiff's right to sue letter was not premature because the EEOC dismissed the charges plaintiff filed.

**B. Title VII Violations**

Defendants move to dismiss the Title VII claims against them for failure to plead sufficient facts to state a plausible claim. To that end, Plaintiff's Title VII claims allege a hostile work environment in Count I; sex discrimination based on a co-comparator theory in Count II; and Retaliation under Count III. (ECF No. 1). "Title VII bars employers from taking a materially adverse action against an employee in retaliation for opposing an unlawful employment practice covered under the statute, such as making a complaint of sex…discrimination." *Hunt v. Constantine Com. Constr.*, No. CV TDC-20-1846, 2023 WL 2744491, at *9 (D. Md. Mar. 31, 2023); 42 U.S.C. § 2000e-2(a). Title VII allows a plaintiff to establish claims by way of the *McDonnell Douglas* framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 793 (1973). "The *McDonnell Douglas* framework is a three-step burden-shifting framework used by Title VII plaintiffs who lack direct evidence of retaliatory discrimination." *Id.* at 250. (citing *Diamond v. Colonial Life & Acc. Ins. Co.,* 416 F.3d 310, 317-18 (4th Cir. 2005)). First, a plaintiff must establish a prima facie case of retaliation. *Id.* Then, the burden shifts to the employer to show the alleged retaliatory action was the result of a legitimate non-retaliatory reason. *Id.* Upon doing so, the burden shifts back to the plaintiff, who may still prove causation if she can show the employer's purported purpose were a mere pretext for discrimination. *Id.*

Plaintiff correctly points out that she need not plead a prima facie case at this stage. (ECF No. 34 at 5). In *Swierkiewicz v. Sorema N.A.*, the Supreme Court explained that the prima facie case under *McDonnell Douglas* "is an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). Moreover, the Court stated that it had "never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss." *Id.* Therefore, the Court held that, to survive a motion to dismiss, "an employment discrimination plaintiff need not plead a prima facie case of discrimination." *Id.* at 515; *see also Laurent-Workman v. Wormuth,* 54 F.4th 201, 210 (4th Cir. 2022); *Bing*, 959 F.3d at 616; *McCleary-Evans v. Maryland Dep't of Transp.*, 780 F.3d 582, 584 (4th Cir. 2015). In *McCleary-Evans*, the Fourth Circuit recognized that a plaintiff asserting employment discrimination in violation of Title VII is "required to allege facts [that] satisfy the elements of a cause of action created by that statute." *McCleary-Evans*, 780 F.3d at 585. Thus, "[t]o state a claim for sex discrimination under Title VII, a plaintiff must plausibly plead that her employer took an adverse action against her because of her sex." *Franovich v. Hanson*, 687 F. Supp. 3d 670, 682 (D. Md. 2023).

1. <u>Plaintiff Fails to Plead a Hostile Work Environment under the Fourth Circuit's High Bar</u>

Defendants move to dismiss the hostile work environment claim, though they do not address each Title VII count separately. The Court understands Plaintiff's criticism of the summary judgment style language throughout Defendants' Motion to Dismiss; however, Plaintiff still must plead a plausible claim to survive a motion to dismiss. To be sure, the Court has considered the nuances of each claim. To state a hostile work environment claim under Title VII, a plaintiff must allege that "(1) she experienced unwelcome harassment; (2) the harassment was

based on her gender, race, or age; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). "[A]n employee can demonstrate that certain conduct is unwelcome simply by voicing her objection to the alleged harasser or to the employer." *Strothers v. City of Laurel*, 895 F.3d 317, 328-29 (4th Cir. 2018). The second element requires that the offending conduct be based on the employee's sex. *See id.* To that extent, a hostile work environment claim differs slightly from Retaliation and Sex Discrimination claims because "Even conduct that is 'unwelcome' or perceived as 'harassing' cannot give rise to a Title VII hostile work environment claim if it was not 'relate[d] to' the plaintiff's race or sex." *Beckwith v. ACME Paper & Supply Co., Inc.*, Case No. 25-cv-2622-ABA, 2026 WL 2119254, at *5 (D. Md. Jul. 23, 2026) (quoting *Sorto v. AutoZone, Inc.*, 821 F. App'x 188, 192 (4th Cir. 2020)).

Here, the allegations do not give rise to a plausible inference that the Defendant's alleged failure to "take adequate remedial action…[and] to remove Mr. Meiklejohn from the workplace" or otherwise investigate Ms. Moebius's complaints in her preferred manner was on the basis of her sex. There is no doubt that Plaintiff personally and honestly was disturbed by the phone calls, comments, and parking lot confrontation, and she has pled enough to establish unwelcome conduct. However, the Complaint does not plead any facts entitling her to an inference that her employer's responses were based on her sex; to the contrary, she incorporates an email chain showing that they did not investigate the claims at her preferred timeline because she imitated several legal proceedings against Mr. Meiklejohn. (ECF No. 1-7 at 2) ("Regarding Mr. Meiklejohn's attendance at Mary Moss, your understanding is not accurate. We enforce every legal agreement we receive. He has provided me with a full copy of the Protective Order, and we have

made arrangements that fully comply with it. Please also understand that internal investigations are the final step in complex cases. AACPS cannot take action until all outside jurisdictions have completed their processes. Therefore, we will not begin questioning or information gathering until your cases are resolved with the police and local courts."). Although Plaintiff disputes that "this is merely the fallout from a failed personal relationship, beyond the scope of Title VII's reach," she insists that Title VII "does not ask how the harassment in question began; instead, it asks whether the conduct that followed targeted the plaintiff because of her sex, and the Complaint answers that question directly." (ECF NO. 34 at 10-11). The Court disagrees with the notion that the Complaint asserts that the Defendants' conduct was based on her sex based on the incorporated documents that explain their conduct is not based on her sex, but rather based on her decision to initiate legal proceedings. Moreover, while Plaintiff's states that Mr. Meiklejohn directed "stalking, sexual overtures, and threats at Ms. Moebius because of her sex," this Motion has been brought by AACPS and AAC DOH, and the Court does not agree that the Complaint alleges that this conduct was because of her sex rather than because of her breakup. There are no allegations that Mr. Meiklejohn engaged in such conduct during their consensual relationship. The Court observes that the alleged threats include Mr. Meiklejohn asking Plaintiff if they were "good at work" in a parking lot after the break up. Without more, this is not enough to reasonably infer that any of AACPS's or AAC DOH's conduct had anything to do with Plaintiff's sex. Multiple allegations in the Complaint relate to Defendant AACPS's inability to investigate until the resolution of the protective order litigation, which Plaintiff alleges resolved in Mr. Meiklejohn's favor. While the Court trusts that these events were distressing for Plaintiff, they are not enough to entitle her to an inference that the alleged failures to "take remedial action" against Mr. Meiklejohn were on the basis of her sex.

Nor are they enough to state a cognizable claim under the third element, which requires facts stating a plausible claim for a work environment that is "sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment." *Beckwith*, 2026 WL 2119254, at *5. This means she "perceived, and a reasonable person would perceive, the work environment to be abusive." *Amirmokri v. Balt. Gas and Elec. Co.*, 60 F.3d 1126, 130–31 (4th Cir. 1995). That generally requires the work environment to have been "permeated with discriminatory intimidation, ridicule, and insult" that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (cleaned up).

Here, the alleged instances of a hostile work environment are largely attributable to out-of-work conduct that transpired during the Plaintiff's break up with Mr. Meiklejohn. The examples of the many phone calls, the legal proceedings she initiated, and the TPO details all took place out of work. Even taken with the several comments Mr. Meilejohn made to Plaintiff at work as well as a one-off parking lot confrontation, Plaintiff's allegations do not amount to the level of severity necessary to permeate a work environment with discriminatory intimidation such that it was an objectively abusive environment. They are certainly not pervasive, as they are an episodic list of isolated incidents that took place over the course of a break up's fallout. *Nixon v. Kysela Pere et Fils, Ltd.*, No. 22-1406, 2024 WL 3666166 (4th Cir. Aug. 6, 2024) ("These isolated incidents do not amount to pervasive mistreatment under Title VII."). Under the Complaint, it is equally plausible that the phone calls and texts would have occurred regardless of whether the two worked together, as they decided to engage in a consensual, personal relationship that did not ultimately end in a healthy manner. Similarly, a Plaintiff's subjective belief—no matter how genuine, and the Court trusts Plaintiff's was—is not enough to state a claim for a hostile work environment. *See*

*Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 284 (4th Cir. 2015) (explaining a single offensive utterance, like simple teasing or an offhand comment, does not create a hostile work environment "without significant repetition or an escalation in the harassment's severity"); *see also Jennings v. Univ. of N.C.,* 482 F.3d 686, 696 (4th Cir.2007) ("Whether gender-oriented harassment amounts to actionable (severe or pervasive) discrimination 'depends on a constellation of surrounding circumstances, expectations, and relationships.' All the circumstances are examined, including the positions and ages of the harasser and victim, whether the harassment was frequent, severe, humiliating, or physically threatening [.]" (citation omitted)); *but see Parker v. Reema Consulting Servs., Inc.*, 915 F.3d 297, 305 (4th Cir. 2019) (reversing a 12(b)(6) dismissal where employee alleged co-workers spread "humiliating" rumor that she was promoted in return for sexual favors, which created "open resentment and disrespect from her coworkers").

Although Plaintiff is correct that she need not plead a prima facie case to survive a motion to dismiss, she must at least allege facts entitling her to a plausible inference of a hostile work environment.[2] Therefore, the Court must dismiss Count I as it fails to plead a cognizable claim for a hostile work environment under the Fourt Circuit's high bar.

The Motion to Dismiss will be GRANTED with leave to amend.

2. Plaintiff Pleads a Cognizable Sex Discrimination Claim under the Fourth Circuit's Recent Title VII Decisions

---

[2] The Court observes several instances in Plaintiff's Opposition brief in which she refers to Mr. Meiklejohn as a "stalker" and describes twenty-four phone calls in one day as "stalking." (ECF No. 34 at 2). The Court takes such allegations seriously, and at the same time recognizes that the characterizations of stalking are derived from certain alleged underlying acts. Here, the Court has considered the single day in which Mr. Meiklejohn placed twenty-four phone calls to Plaintiff after their break up. There are no allegations that this was a repeated occurrence or a pattern that developed over the course of the weeks at issue here. As such, the Court understands allegations of "stalking" to be Plaintiff's characterization of one event rather than a factual assertion concerning multiple events. Moreover, the Court observes that in spite of the repeated references to how Plaintiff felt, the Complaint fails to assert what Mr. Meiklejohn said that was threatening aside from statements such as accusing Plaintiff of having started things at work, that he would not hesitate to go to administration, and asking her whether they were "good at work" in a parking lot. The Court does not find that these allegations are sufficient to entitle Plaintiff to a plausible inference that Mr. Meiklejohn's conduct transformed the workplace into one of abuse, ridicule, or threats of bodily harm.

A Title VII plaintiff establishes a prima facie case of discrimination on the basis of disparate treatment by demonstrating four elements: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class. *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (citing *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004)). The presence of an adverse employment action is "an absolute precondition" to an employment discrimination suit. *Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir. 1985). An adverse employment action need not be "tied to the terms and conditions of employment." *Herkert v. Bisignano*, 151 F.4th 157, 165-66 (4th Cir. 2025). "[O]nly 'materially adverse' actions...'serious enough to dissuade a reasonable worker from making or supporting a charge of discrimination'" will satisfy this element of a Title VII retaliation claim. *Id.* (quoting *Muldrow v. City of St. Louis*, 601 U.S. 346, 358 (2024)).

As an initial matter, there is no dispute that Plaintiff is part of a protected class. Defendants primarily argue that the Complaint fails to plead an adverse employment action, though they also argue Plaintiff did not allege a satisfactory job performance. The Court observes that the Complaint's assertions concerning Plaintiff's job performance are quite sparse, though in context, the Court is satisfied that Plaintiff is at least entitled to such an inference. Plaintiff pleads in multiple instances that she was performing her job responsibilities when these alleged instances of a hostile work environment took place. The Court is more concerned with the allegations concerning an adverse employment action and a similarly-situated counterpart.

Plaintiff alleges that within weeks of making complaints about Mr. Meiklejohn's conduct, Plaintiff was transferred to a different school "without explanation, and told not to return or collect her belongings." Defendants argue that such a transfer is not enough to survive the pleading stage

because "[s]he has lost no title, responsibilities, or pay." Review of the Complaint confirm that the allegations are consistent with this characterization. At this early stage, and recognizing that *Herkert* does not require adverse employment actions to be "tied to the terms and conditions of employment," the Court finds that the allegations that she was not allowed to return to collect her belongings for some time and that she was transferred without explanation and told not to come back are serious enough to dissuade a reasonable person from making or supporting a charge of discrimination if this action resulted from filing those charges. *Herkert*, 151 F.4th at 165-66.

Defendants further argue that Plaintiff has failed to plead a similarly situated employee who received different treatment outside of the protected class. They argue that while Plaintiff was transferred and Mr. Meiklejohn was not, they are not similarly situated because she pleads he is a Crisis Interventionist who is employed by a different department. However, Defendant's insistence that Plaintiff must meet the fourth element at the motion to dismiss stage "misapprehends the requirements of Title VII: [a plaintiff] is not required as a matter of law to point to a similarly situated...comparator in order to succeed" on a claim of discrimination. *Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 545 (4th Cir. 2003) (citing *Dennis v. Columbia Colleton Med. Ctr*., 290 F.3d 639, 644–45 (4th Cir. 2002)); *see also Noonan v. Consol. Shoe Co., Inc.*, 84 F.4th 566, 573 ("Of course, [a plaintiff] doesn't need a...comparator to establish a prima facie case of...discrimination." (internal citation omitted)). Although "[c]ourts frequently reframe the fourth element...as 'similarly situated comparators,'" *Johnson v. Balt. City*, 163 F.4th 808, 815 (4th Cir. 2026) "comparator evidence is [not] the final answer in discrimination law." *Laing v. Fed. Express Corp*., 703 F.3d 713, 720 (4th Cir. 2013). At the motion-to-dismiss stage, a plaintiff bears the burden of pleading facts sufficient to raise an inference of discrimination—Plaintiff need

not plead a prima facie case under the *McDonnell Douglas* framework. *See Johnson*, 163 F.4th at 815.

Here, the Court observes that the Complaint clearly alleges the conclusion of a personal relationship between Plaintiff and Mr. Meiklejohn, at which point Plaintiff's working relationship with him deteriorated, and despite her repeated requests that the Defendants prevent him from confronting he at work, it was Plaintiff and not her male counterpart who was transferred without explanation, warning, or the ability to collect her things for some time. Defendants' arguments may well prevail at a later stage after discovery has shed light on the precise events and the motivations of Defendants' decision-making authorities. In view of the recent Fourth Circuit decision in *Johnson*, a decision Defendants do not address, the Court is not persuaded that an apparent lack of precision perhaps necessary to survive a later stage precludes discovery now.

Therefore, the Court finds that Plaintiff has at least plead a plausible sex discrimination claim at this early stage.

3. <u>Plaintiff Pleads a Cognizable Retaliation Claim at this Early Stage</u>

Although Defendants do not address each Title VII claim separately, the standards do differ slightly. To that extent, the Court finds it appropriate to recognize them in turn. "In order to make out a claim for retaliation, Plaintiff must show '(i) that [she] engaged in protected activity, (ii) that [the employer] took adverse action against [her], and (iii) that a causal relationship existed between the protected activity and the adverse...activity.'" *Sledge v. Liuna Local 11*, Civil Action No. DKC 20-3384, 2023 WL 3043767, at *8 (D. Md. Apr. 21, 2023) (quoting *Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 250 (4th Cir. 2015)).

The only element in controversy here is whether a causal relationship exists between Plaintiff's filing of the charges of discrimination and her transfer. Here, a plaintiff can show

causation in a retaliation claim either by (1) establishing temporal proximity between the protected activity and the adverse action; or (2) by establishing other relevant evidence that indicates continuing retaliatory conduct and animus towards the plaintiff. *Johnson*, 163 F.4th at 819 (cleaned up). Here, Plaintiff pleads mere weeks between the protected activity and her transfer, which is enough at the pleading stage. *See King v. Rumsfeld*, 328 F.3d 145, 151 n.5 (4th Cir. 2003) (finding that a two-and-a-half month gap was sufficient to establish causation solely on the basis of temporal proximity); *Carter v. Ball*, 33 F.3d 350, 460 (4th Cir. 1994) (finding a six week gap sufficient to show temporal proximity). Therefore, the Court is not persuaded to dismiss Plaintiff's retaliation claim at this early stage.

**C. The Negligence Claims Fail to State a Cognizable Claim**

Defendants also move to dismiss the negligence claims against them for failure to plead sufficient facts to state a plausible claim. As an initial matter, the Court observes that Plaintiff has broken two related claims into two counts—those are Count IV, Negligent supervision, and Count V, Negligent Retention. These claims will be addressed together, as Maryland applies the same standard to both.

To state a plausible claim for Negligent Hiring, Supervision, Retention, or Training, "a plaintiff must plead facts that, if proven, would establish (1) her injury was caused by the tortious conduct of [an employee]; (2) that the employer knew or should have known by the exercise of diligence and reasonable care that the [employee] was capable of inflicting harm of some type; (3) that the employer failed to use proper care in selecting, supervising, or retaining that employee; (4) and that the employer's breach of its duty was the proximate cause of the Plaintiff's injuries." *Doe v. Cmty. Coll. of Balt. Cnty.*, 595 F. Supp. 3d 392, 419 (D. Md. 2022) (quoting *Jordan v. W. Distribut. Co.*, 135 F. App'x 582, 589 (4th Cir. 2005)); *Kornegay v.*

*United States*, 802 F. Supp. 3d 767, 790 (D. Md. Sep. 29, 2025). Thus, a negligent hiring, retention, supervision, or training claim requires allegations sufficient to support an inference of, *inter alia*, the employer's actual or constructive knowledge of employee incompetence. *See Minnick v. Southwest Airline Co.*, Civil Case No. 1:22-cv-2084-JMC, 2024 WL 4252988, at *2 (D. Md. Sep. 20, 2024) (internal quotations omitted); *see also Latty v. St. Jospeh's Soc. of Sacred Heart, Inc.*, 198 Md.App. 254, 272 (Md. Spec. App. 2011) *abrogated on other grounds by Plank v. Cherneski*, 469 Md. 548 (2020). Specifically, a plaintiff must allege an employer "had or should have had knowledge of [the employee's] conduct or general character which would have caused a prudent employer in these circumstances to have taken action." *Bryant v. Better Bus. Bureau of Greater Maryland, Inc.*, 923 F. Supp. 720, 751 (D. Md. 1996).

Plaintiff alleges AACPS was negligent in the supervision and retention of Mr. Meiklejohn after the November 6, 2025 parking lot encounter took place. The entire basis for Plaintiff's negligent retention and supervision claims is based on the conduct at issue for the entire lawsuit, those being her allegations of stalking, communication in the parking lot, and a temporary protective order. Although Plaintiff alleges a coworker warned her personally not to date Mr. Meiklejohn, she decided not to take that advice. There are simply no allegations giving rise to a plausible inference that the Defendants' knew or should have known that Mr. Meiklejohn would engage in any behavior that "would have caused a prudent employer in these circumstances to have taken action." *Bryant*, 923 F. Supp. at 751. Plaintiff argues that her repeated written complaints constitute notice. (ECF No. 34 at 20). It is true she complained of their communications, yet those amounted to one-off comments or the parking log incident in which Mr. Meiklejohn asked if "we're good at work." These fail to give rise to an inference that a reasonable employer in these circumstances should have taken action. Without more, the

Complaint fails to plead sufficient facts entitling her to a plausible inference that Defendant AACPS knew or should have known of conduct that would cause a reasonable employer to act.

Therefore, the Motion to Dismiss Counts IV and V is GRANTED with leave to amend.

## IV. CONCLUSION

For the reasons stated herein, it is hereby ORDERED:

(1) The Motion to Dismiss (ECF No. 17) is GRANTED with respect to Count I, asserting a sex-based hostile work environment in violation of Title VII, Count IV, asserting a Negligent Supervision claim, and Count V, asserting a Negligent Retention claim;

(2) Counts I, IV, and V are hereby DISMISSED without prejudice and with leave to amend; and

(3) The Motion to Dismiss (ECF No. 17) is DENIED with respect to Count II, asserting a sex discrimination claim in violation of Title VII, and Count III, asserting a claim of unlawful retaliation in violation of Title VII.

Date: August 26, 2026

/s/
J. Mark Coulson
United States Magistrate Judge